ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, *Plaintiff in Error*, vs. A. E. CAMPBELL, for the use and benefit of National Fire Insurance Company of Hartford, a corporation, *Defendant in Error*.

139 So. 886.

Division A.

Opinion filed February 18, 1932.

*Kelly & Shaw,* of Tampa, for Plaintiff in Error;

*Johnson, Bosarge & Allen,* of Bartow, for Defendant in Error.

DAVIS, J.—This suit was brought by the National Fire Insurance Company against the Atlantic Coast Line Railroad, to recover from the railroad company the amount of damages alleged to have been negligently inflicted upon one A. E. Campbell in the destruction of his truck by fire. The truck in question was being used by Campbell for the purpose of hauling brick from a railroad car placed upon a team track in the railroad yard in the city of Lakeland. The negligence charged was that while Campbell's truck was in position against a railroad car for the purpose of being loaded with brick, the railroad's agents and servants negligently caused the railroad car to be moved in such sudden and violent manner, that the truck standing backed up to the car door, was overturned and shortly thereafter was destroyed by fire.

Subsequent to the infliction of the damage, the insurance company paid to the owner of the truck the sum of $1662.74. This amount was the sum of money for which it had become liable on a policy of fire insurance which the company had previously issued to protect the owner against loss or destruction of the truck in question. The insurance company in its declaration claimed subrogation to the acquired rights of the truck owner to sue the railroad company, and accordingly brought its suit on that basis to recover the amount which it had paid out to its policy-holder on account of the truck's loss by fire through the alleged negligence of the Atlantic Coast Line Railroad Company. Verdict was rendered for $1124.00 and judgment for that amount entered after

the court had overruled motions for a new trial and in arrest of judgment.

The doctrine is well settled that an insurer, after payment of a loss incurred by the assured, is subrogated to all the rights of the assured against the person or corporation whose tortious act has caused the loss. Mobile Insurance Co. v. Columbia & Greenville Railroad Co., 19 S. E. 858; 44 Am. St. Rep. 725, 41 S. C. 408; Travelers Insurance Co. v. Great Lakes Engin. Works Co., 184 Fed. 426, 107 C. C. A. 20, 36 L. R. A. (N. S.) 60; Hart v. Western R. R. Co., 13 Metcalf (Mass.) 99, 46 Am. Dec. 719; Phoenix Insurance Co. v. Erie & Western Transp. Co., 117 U. S. 312; 6 Sup. Ct. 750, 1176, 29 L. Ed. 873; The Potomoc v. Cannon, 105 U. S. 630, 26 L. Ed. 1194. And it is also well settled that the proper mode of enforcing such right of subrogation is by an action in the name of the insured for the benefit of the insurance company. Mobile Insurance Co. v. Columbia & Greenville R. R. Co., 44 Am. St. Rep. 725, *supra*. And in any form of remedy the insurer can take nothing by subrogation in any case but the rights of the insured. Phoenix Insurance Co. v. Erie & Western Transp. Co., 117 U. S. 312, 6 Sup. Ct. 750, 1176, 29 L. Ed. 873, *supra*.

In cases like this, the liability of the railroad company is, in legal effect, first and principal, and that of the insurer secondary; not in order of time, but in order of ultimate liability. The assured may first apply to whichever of these parties he pleases—to the railroad company by his right at law, or to the insurance company, because of his insurance contract. If he obtains payment of his damages from the railroad company, he thereby diminishes his loss, and his claim against the insurance company for indemnity is for the balance only of the loss, if any. And so it is, that if he applies first to the insurer and receives his whole loss from the insurer, he thereafter holds his claim against the railroad

company in trust for the insurer who indemnified him. Such being the equitable situation that exists, the party holding the legal right against the tort feasor, is deemed to have made an equitable assignment of his right to recover for the tort, which the insurer is entitled to enforce by an action brought in the name of the injured party for his own use and benefit against the tort feasor, after the insurer has already indemnified the injured party in the first instance by paying the loss he has sustained through the injury tortiously inflicted. Hart v. Western R. R. Co., 13 Metcalf 99, 46 Am. Dec. 719; Hall v. Nashville & Chattanooga R. R. Co., 13 Wall. (U. S.) 367, 20 L. Ed. 594; Mobile & M. Ry. Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. Rep. 566, 28 L. Ed. 527.

Since the insurer's right of recovery rests upon the very nature of the contract of insurance as a contract of indemnity, and his title arises out of the insurance contract, and is derived from the assured alone, and can only be enforced in the right of the latter,—and in a court of common law, can only be asserted in the assured's name,—and because it rests upon the equitable doctrine of subrogation by operation of law, whether any special agreement to assign the cause of action was made by the injured party with the assured or not, the fact that at common law a cause of action in tort is not assignable becomes immaterial to plaintiff's right to recover, since the suit is maintainable under the doctrine of subrogation by operation of law, without any express assignment to that effect being necessary. The Steamboat Potomoc v. Cannon, 15 Otto (U. S.) 630, 26 L. Ed. 1194; Phoenix Insurance Co. v. Erie & Western Transportation Co., 117 U. S. 312, 6 Sup. Ct. 750, 1176, 29 L. Ed. 873; 14 R. C. L. 1404; 33 C. J. 43.

In the light of the principles to which we have just adverted, the court below properly held that the action by plaintiff insurance company was legally maintainable

against the carrier. There was, in consequence, no error in overruling the demurrer to the declaration or in denying the motion in arrest of judgment on the ground of "no cause of action stated". The permission granted plaintiff to make an amendment to the declaration to show that the suit was being maintained in the name of Campbell, for the use and benefit of the insurance company instead of in the name of the insurance company alone, was likewise without error under the principles stated in Indian River State Bank v. Hartford Fire Ins. Co., 46 Fla. 283, 35 Sou. Rep. 228.

We have already pointed out that the right of the insured to recover through subrogation is limited to the right which the truck owner himself could have asserted directly against the railroad company in a suit brought by himself for that purpose. It was therefore incumbent upon the plaintiff as subrogee to allege and prove that the loss of the truck by fire was the proximate result of the tortious act of the defendant in overturning the truck through its negligent operation of one of its trains.

To support plaintiff's contention that the destruction of the truck by fire was directly due to the overturning of the vehicle, plaintiff offered as a witness one C. G. Arrendall, fire chief of the City of Lakeland. Over the defendant's objections, this witness was permitted to testify as follows:

"Q. Mr. Arrendall, you have already stated you were fire Chief of the City of Lakeland?

A. Yes, sir.

Q. How long have you held that position?

A. Since 1916.

Q. During that time have you ever had any experience with automobiles taking fire?

A. Yes, sir.

Q. State whether or not from the years of experience that you have, and the facts that you may have observed during that time, whether or not a car being

overturned with a consequent leakage of gasoline in and under the car, could take fire without external means of applying the fire?

A. Yes, sir.

Q. How long a time, from your observation as fire chief, have you observed a wrecked car, or car turned over, taking fire without external ignition?

A. On two occasions I recall, one of them was car caught on fire after having been pulled out of a lake, it ran into lake. After it was pulled out and up on shore it caught on fire. On another occasion the car had turned over and after it straightened up, it caught on fire. I do not know how long they had been turned over, nor how long in the water before it caught.

Q. Now, with both of these fires, was there any external combustion or fire or spark applied to that car?

A. No, only from a battery or crossed wire.

Q. Now, have you had any experience with the wiring of automobiles, batteries and ignition systems?

A. Very little.''

The evidence showed that the truck in question had been overturned as a result of a collision with the railroad car. The plaintiff, by its declaration, had tendered the issue that the act of overturning the truck was a direct and proximate cause of the fire which damaged it. The purpose of the introduction of this evidence was to show by witness Arrendall, fire chief of the city of Lakeland, that on two occasions while he had held that office other automobiles, the identity or description of which was undisclosed, had caught fire under varying conditions. The purpose of the testimony was therefore to prove a material issue in the case, that is, that the fire complained of was a direct and proximate result of the collision by which the truck was overturned. This fact had been put in issue by the pleadings and was the principal controversy for submission to the jury to determine as a question of fact at the trial. The testimony

in question was objected to by the defendant. It was elicited by questions propounded by counsel for plaintiff and was not brought out on cross examination to test the knowledge or credibility of the witness. Its relevancy and admissibility must therefore stand or fall upon its propriety as a means of proving that the fire resulted proximately and directly from the overturning of the truck and not from any other cause.

The evidence offered presented a purely collateral issue which was both remote and uncertain, affording no reliable ground for comparison if established. It was calculated rather to confuse and mislead the jury than to aid them in coming to a direct conclusion on the matter submitted for their determination, which was the necessary relationship of the fire to the overturning of the truck. Being so, it was inadmissible and should not have been received over the defendant's objection. Clark v. Rockland Water Power Co., 52 Me. 68.

The fire chief's testimony was that on two occasions he had been called on to extinguish burning automobiles. One of these automobiles had caught fire after it was pulled out of a lake; the other had overturned and had caught fire after it was straightened up. If proof of these two instances was pertinent to be submitted to the jury to prove that the truck in question had caught fire solely because it was overturned, it would likewise have been admissible for the defendant to have offered witnesses to prove that other automobiles had been overturned and had not caught fire. The result would be, had the defendant done so, that the jury would ultimately have been trying a purely collateral issue, the decision of which would have had no material bearing upon the cause of the fire involved in this particular case.

The chief object in introducing evidence is to secure a rational ascertainment of facts; therefore facts should

not be submitted to the jury unless they are logically relevant to the issues. A fact in a cause must be both logically and legally relevant, for even logical relevancy does not in all cases render proposed evidence admissible. A fact which in connection with other facts, renders probable the existence of a fact in issue, should still be rejected where, under the circumstances of the case, it is essentially misleading or too remote. Brucker v. Gainesboro Telephone Co., 125 Ky. 92, 30 Ky. L. Rep. 1162; 100 S. W. 240; Wyman v. Lehigh Valley R. R. Co., 158 Fed. 957; 86 C. C. A. 161; Fitzsimons & Connell Co. v. Braun, 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421.

The admission of this evidence was prejudicial to the defendant in that it invited speculation by the jury as to the cause of the fire, based upon other instances testified to by the witness which had no probative value because the conditions or circumstances in the other instances testified to were not similar to the case in hand. The admission of this evidence if mere technical error, would be harmless, but it is not mere technical error. In close cases of contested fact where testimony of this character is improperly admitted over the defendant's objection, this court must accept it as having been tendered by the plaintiff and admitted by the court for the purpose of establishing some fact vitally necessary to prove plaintiff's case, or as having a tendency to influence the jury in reaching a conclusion in favor of the plaintiff's right to recover. Where such testimony goes to the jury with the sanction of the court and a verdict is obtained in favor of the party insisting upon the introduction of such testimony, this court cannot look into the minds of the jury and determine to what extent such testimony induced the verdict rendered, nor can we say that it had no effect and was harmless. Gunn v. State, 78 Fla. 599, 83 Sou. Rep. 511. The admission of the testimony objected to over defendant's objection

therefore constitutes reversible error for which a new trial should be awarded.

The defendant's motion for a new trial alleged error of the court in giving instructions to the jury and in its refusal to instruct the jury in certain particulars at the defendant's request. The charges given appear to have fully and fairly stated the controversy and none of those objected to appear to have been improperly given. The charges refused were either covered by the charges already given or were objectionable because embracing a direction to the jury which deprived the plaintiff of the benefit of proof of his case by circumstantial instead of direct evidence.

In view of the fact that a new trial must be awarded, a discussion of the sufficiency of the evidence is inappropriate. Whether or not the truck in question was burned through the negligence of the railroad company in overturning it was a question of fact properly submitted to the jury under appropriate instructions. It was for the jury to say whether or not the fire which occurred was the result of the accident and that fact they should be permitted to determine from circumstantial, as well as direct and positive, evidence.

For the error pointed out the judgment should be reversed and a new trial awarded and it is so ordered.

Reversed for a new trial.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.